IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| **Jeffrey Thomas, Jr.**<br>301 Virginia St. Unit 1514<br>Richmond, VA 23219<br><br>    Plaintiff,<br><br>    v.<br><br>**Susan Beals**<br><br>**Robert Brink**<br>1100 Bank St.<br>Richmond, VA 23219<br><br>    Defendants. | Civil No. 3:22cv427 |

## PETITION FOR WRIT OF MANDAMUS

This is a petition for a writ of mandamus by Plaintiff Jeffrey Thomas, Jr. against Defendants Susan Beals, Commissioner of the Virginia Department of Elections, and Robert Brink, Chairman of the Virginia Board of Elections, to seek relief for injury arising from their violation of Plaintiff's constitutional rights under the Equal Protection Clause of the United States Constitution.

## NOTICE OF RELATED CASE

This case is related to *Goldman v. Brink*, Civil No. 3-21:cv-00420-DJN-SDT-RAJ. On June 6, 2022, this Court found that Mr. Goldman did not have standing and dismissed *Goldman v. Brink* with prejudice (*Goldman v. Brink*, ECF 89). Plaintiff had moved to intervene in that case on October 15, 2021 pursuant to the Court's instructions to prospective intervenors (*Goldman v. Brink*, ECF 45). In its dismissal, the Court wrote, "Because Plaintiff has failed to establish his

standing, the Court need not address Defendants' other arguments, including mootness. Likewise, because no case or controversy exists at this point, the Court denies as moot Plaintiff's Motion to Produce Records and Jeffrey Thomas, Jr.'s Motion to Intervene. The Court advises Mr. Thomas that, if he elects to file his own lawsuit in this district involving the same issues in this case, he must indicate at the time of filing that his case is related to the instant case, consistent with the Court's related case procedures." (*Goldman v. Brink*, ECF 89, p. 31).

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 42 U.S.C. § 1983.
2. This Court has personal jurisdiction over Defendants, who are employees or agents of Virginia government with their main offices in Richmond.
3. Venue is appropriate in this Court, as all relevant actions alleged to be unlawful were committed in Richmond within the jurisdiction of the Eastern District of Virginia.
4. Plaintiff is a resident of Richmond, Virginia.

## FACTUAL ALLEGATIONS

1. Virginia legislative districts are typically redrawn every ten years following the decennial censuses in advance of years ending in -1 (2001, 2011, etc.)
2. Virginia's legislative districts were not redrawn prior to 2021 House of Delegates elections.
3. Virginia's congressional elections will be held in 2022.
4. In 2021, Plaintiff was a qualified voter in Virginia's House of Delegates District 71 (HD 71-2011).
5. HD 71-2011 is a majority-minority district.

6. According to the Virginia Redistricting Commission, the post-*Bethune Hill* (2018) demographics of HD 71-2011 are: 59.0% Black; 34.7% white; 4.0% Asian; 2.5% Hispanic; 0.9% multiple races; 0.5% American Indian or Alaska Native; and 0.1% Hawaiian Pacific Islander.[1]

7. Plaintiff voted in the 2021 general elections.

8. Plaintiff intends to continue residing at his current address in 2022, 2023 and 2024.

9. Plaintiff intends to vote in the 2022, 2023 and 2024 general elections.

10. Plaintiff and all other voters and residents in HD 71-2011 have had their voting strength and political representation unconstitutionally diluted or weakened by the failure of Defendants to conduct, enact or oversee decennial constitutional reapportionment, redistricting or elections.

11. The voter underrepresentation, dilution or weakening in HD 71-2011 is greater than the 10% threshold adopted by the Supreme Court in *Brown v. Thomson*, under which the burden of proof for inequitable redistricting shifts to the state.

12. According to 2020 Census data provided by the Virginia Redistricting Commission pursuant to a Freedom of Information Act request (*Goldman v. Brink*, ECF 22-1, p. 4), the population of Plaintiff's district, HD 71-2011, is 93,525.

13. The population of Virginia according to the 2020 Census is 8,631,393.[2]

14. The Supreme Court has acknowledged that "some deviations from population equality may be necessary to permit the States to pursue other legitimate objectives such as "maintain[ing] the integrity of various political subdivisions" and "provid[ing] for compact districts of contiguous territory." *Reynolds v. Sims*, 377 U.S. 533, 578," as

---

[1] https://virginiaredistricting.org/2010/Data/House%20Plans/Final_Remedial_Plan/final%20remedial%20plan.pdf, p. 6, HD 71.
[2] https://www.census.gov/quickfacts/VA. "Virginia: Population, Census, April 1, 2020."

Justice Powell wrote for the majority. "But an apportionment plan with population disparities larger than 10% creates a prima facie case of discrimination and therefore must be justified by the State, the ultimate inquiry being whether the plan may reasonably be said to advance a rational state policy and, if so, whether the population disparities resulting from the plan exceed constitutional limits." *Brown v. Thomson*, 462 U.S. 835, (1983).

15. The 10% standard relates to "disparities" between the smallest and largest districts. *Brown v. Thomson*, 462 U.S. 835, (1983).

16. The 10% standard does *not* refer to differences between a legislative district population and the *mean* average population but to the *maximal* difference in any legislative redistricting plan between the smallest and largest districts. *Brown v. Thomson*, 462 U.S. 835, (1983).

17. According to census data released by the Virginia redistricting commission pursuant to a Freedom of Information Act request, the smallest district (HD 3-2011) has a population of 71,122 and the largest district (HD 87-2011) has a population of 130,082 (*Goldman v. Brink*, ECF 22-1, pp. 3-4).

18. This 130,082/71,222 ratio between largest and smallest House of Delegates district populations in Virginia represents an 82.900% disparity.

19. 130,082 residents in HD 87-2011 have the same representation in the House of Delegates as the 71,222 residents in HD 3-2011.

20. Voters and residents in Plaintiff's district, a majority-minority district, are 93,525/71,222, or 31.315% diluted or weakened compared to voters in HD 3-2011, which is not a majority-minority district.

21. The 31.315% deviation in Plaintiff's district far exceeds the 10% threshold elucidated in *Brown v. Thomson*, 462 U.S. 835, (1983).

22. HD 71-2011 is unconstitutional by federal standards and illegal under Virginia Code and the Virginia Constitution, which incorporates federal law in Article II, Section 6. ("Every electoral district shall be drawn in accordance with the requirements of federal and state laws that address racial and ethnic fairness, including the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States and provisions of the Voting Rights Act of 1965, as amended, and judicial decisions interpreting such laws.")

23. "Districts shall be so constituted as to give, as nearly as is practicable, representation in proportion to the population of the district. A deviation of no more than five percent shall be permitted for state legislative districts." Va. Code Ann. § 24.2-304.04(1).

24. A population of 93,525 is impossible under Virginia Code at the 5% threshold under any possible redistricting plan in Virginia.

25. The Virginia Redistricting Commission adopted the guidance that the target population deviation would be not greater than 4%. ("Each legislative district should be drawn to be as equal as practicable, with total population variances minimized, with a target of no more than plus or minus 2%, while considering the other principles listed below.")[3]

26. "Districts shall be drawn in accordance with the requirements of the Constitution of the United States, including the Equal Protection Clause of the Fourteenth Amendment, and the Constitution of Virginia; federal and state laws, including the federal Voting Rights Act of 1965, as amended; and relevant judicial decisions relating to racial and ethnic fairness." Va. Code Ann. § 24.2-304.04(2).

---

[3] https://www.virginiaredistricting.org/2021/Data/Ref/2021%20Redistricting%20Guidelines%20and%20Criteria%20 8-19-2021.pdf.

27. "No district shall be drawn that results in a denial or abridgement of the right of any citizen to vote on account of race or color or membership in a language minority group. No district shall be drawn that results in a denial or abridgement of the rights of any racial or language minority group to participate in the political process and to elect representatives of their choice." Va. Code Ann. § 24.2-304.04(3).

28. New House of Delegates district lines were approved in a Redistricting Final Order by the Virginia Supreme Court on December 28, 2021. (https://www.vacourts.gov/courts/scv/districting/redistricting_final.pdf)

29. Plaintiff's domicile is now located within House of Delegates District 78 (HD 78-2022) (https://www.virginiaredistricting.org/legdistricting/comments/plan/548/1).

30. HD 78-2022 has a population of 87,774. (*Ibid.*)

31. The House of Delegates District with the lowest population is HD 27-2022, with 84,213 residents. (*Ibid.*)

32. The deviation between Plaintiff's district and the least populous district is 87,774/84,213 = 4.23%. This is within legal and constitutional limits.

33. The House of Delegates District with the largest population is HD 75-2022, with 88,463 residents. (*Ibid.*)

34. The deviation between Plaintiff's district and the most populous district is 88,463 /87,774 = 0.78%. This is within legal and constitutional limits.

35. The deviation between the largest and smallest House of Delegates districts is 88,463 /84,213 = 5.05%. This slightly exceeds the 5% threshold mandated by Virginia code but is within federal constitutional limits.

36. Regardless of these new lines, Plaintiff and all Virginians continue to be represented under old district lines and politicians elected within them.

37. Plaintiff moved to intervene in the *Goldman* case on October 15, 2021 pursuant to the Court's October 12, 2021 Order directing that "by October 29, 2021, any prospective intervenors who wish to intervene in this case must file a Motion to Intervene" (*Goldman v. Brink*, ECF 41, par. 5).

38. Plaintiff correctly predicted in his Motion to Intervene (*Goldman v. Brink*, ECF 45-3), "Given the five percent maximum deviation under Virginia Code, after *any* redistricting, Plaintiff and voters and residents in his district will inevitably gain voting and political representation power merely equal to that now held by the majority of other Virginians.

39. Plaintiff correctly predicted in his Motion to Intervene (*Goldman v. Brink*, ECF 45-3), "Wherever the lines are drawn in redistricting, the districts cannot possibly include any districts as large as Plaintiff's current district without being subject to "prima facie" constitutional scrutiny and violation of Va. Code Ann. § 24.2-304.04(1)."

40. Plaintiff correctly predicted in his Motion to Intervene (*Goldman v. Brink*, ECF 45-3), "After any possible redistricting, Plaintiff and the voters and residents in his district will have their votes more fairly and equally counted and be more fairly and equally represented in the General Assembly."

41. As Plaintiff correctly predicted in his Motion to Intervene (Goldman v. Brink, ECF 45-3), "One hundred equal House of Delegates districts would each contain 86,313 or 86,314 people." The "target population" for the Virginia Supreme Court's December 2021 redistricting was 86,314.

https://www.virginiaredistricting.org/legdistricting/comments/plan/548/1

42. "In light of Federal Rules of Civil Procedure Rule 1's requirement for "the just, speedy, and inexpensive determination of every action and proceeding" and the Court's March 21, 2022 Hearing and Order (ECF 69)," Plaintiff filed a "Notice of Intent to File Separate Lawsuit and Request for Joinder" on March 24, 2022. (*Goldman v. Brink*, ECF 71-1, p. 1).

43. Defendants' actions to facilitate or conduct House of Delegates elections under unconstitutional lines in 2021; Defendants' refusal to schedule constitutional elections despite their knowledge since December 2021, at the latest, of constitutional lines pursuant to the Virginia Supreme Court's Final Redistricting Order; and Defendants' continual actions to attempt to ensure those unconstitutionally-elected politicians are seated for two-year terms ensures that Plaintiff and other residents and voters in HD 71-2011 will not be constitutionally represented in the House of Delegates until 2024, when legislators are sworn in subsequent to 2023 elections.

44. Defendants' failure to conduct 2021 House of Delegates elections under constitutional maps and refusal to hold House of Delegates elections under constitutional maps until 2023 clearly harms Plaintiff and all other similarly-situated voters and residents in his district and will continue to harm them through 2024.

45. Plaintiff's underrepresentation in the General Assembly delegation continually harms him when any politician action is taken, potentially taken, or not taken.

46. Defendants oversee elections in Virginia and are proper parties in this case. They were found to be the proper Defendants in their official capacities. (*Goldman v. Brink*, ECF 40). Defendant Susan Beals replaced Christopher Piper as Commissioner of the Virginia Department of Elections in March 2022.

47. Defendants "facilitate the state's elections, even if they do not draw the legislative district maps or set elections themselves." *Ibid.*

48. Defendants "oversee the execution of the General Assembly's enactments." *Ibid.*

49. Defendants "maintain the special enforcement relationship with the electoral process." *Ibid.*

50. Defendants "each serve as individual state officers, and not as an arm of the state." *Ibid.*

## COUNT 1 – VIOLATION OF THE EQUAL PROTECTION CLAUSE

51. Defendants' failure to facilitate, timely adopt or oversee the required constitutional elections, redistricting or reapportionment of the Virginia House of Delegates violates the Equal Protection Clause of the Fourteenth Amendment by causing Plaintiff and 93,524 other people in HD 71-2011, a majority-minority district, to be underrepresented in the House of Delegates by a factor of more than 30% compared to other voters in less populous districts in Virginia.

52. Defendants' failure to facilitate, oversee or execute constitutional elections for the Virginia House of Delegates violates the equal protection rights of Plaintiff and the 93,524 other residents of HD 71-2011.

53. The deviations between the House of Delegate district populations violate the constitutional rights of Plaintiff and every qualified voter in his district to have their votes counted equally through their representatives elected to the General Assembly.

54. The deviations between the House of Delegate district populations violate the constitutional rights of Plaintiff and 93,524 other people in HD 71 to have equal political representation in the General Assembly.

55. Defendants and/or others in Virginia government deliberately conducted unconstitutional elections in 2021 for two-year House of Delegates terms.

56. Without Court intervention, Defendants will continue to harm the rights of Plaintiff and 93,524 other underrepresented people in HD 71-2011 to equal protection, equal voting rights and equal political representation in the Virginia House of Delegates until new House of Delegates members are sworn in under constitutional lines in 2024.

57. Without Court intervention, Defendants will continue to violate the rights of Plaintiff and 93,524 other underrepresented people in HD 71-2011 to equal protection, equal voting rights and equal political representation in the Virginia House of Delegates until new House of Delegates members are sworn in under constitutional lines in 2024.

58. Conducting House of Delegates elections in 2022 under constitutional lines is a proper remedy under the *Cosner* (E.D. Va. 1981) precedent.

## REQUEST FOR RELIEF

As a direct and proximate result of Defendants' conduct, Plaintiff has suffered injury to his constitutional rights justifying relief. The *Cosner* (E.D. Va. 1981) remedy is the most sensible for the reasons outlined in *Cosner*.

WHEREFORE, Plaintiff prays that the Court enter judgment against Defendants and requests the following relief, and such other relief as this Court deems fair and appropriate.

1. Plaintiff requests that the Court order House of Delegates elections to be held under constitutional maps at the time of the 2022 general elections.

## CONCLUSION

The *Cosner* precedent and its incorporation into the Virginia Constitution, Article 6 through a vote of the people in November 2020, was clearly not sufficient to coerce Defendants

to perform their legal duties to protect the citizenry's constitutional rights to equal voting and representation. Defendants have deliberately played games with the Court and the people's rights for political reasons.

The Court is already intimately familiar with the facts of this case. Plaintiff respectfully submits that there are no facts actually in dispute in this case (Plaintiff's Declaration) and that the facts giving rise to this case would never have come to pass if there were attorneys independently representing the people beyond the reach of politics.

The current unconstitutional scheme benefits one hundred incumbents and their political dependents. Attorneys General Herring and Miyares and their litigators have little in common except their strategies to moot this matter through delay. Given the time-sensitive nature of this case and the Court and Defendant's acute familiarity with it, Plaintiff respectfully requests expedited consideration. A proposed Scheduling Order is attached.

Respectfully submitted,

Dated: June 8, 2022

Plaintiff Jeffrey Thomas, Jr.
301 Virginia St. Unit 1514
Richmond, VA 23219
(804) 418-0252
jeffburkethomas@gmail.com